Our third case for this morning will be Schaumburg Bank &Trust against Alsterda. And we'll hear first from Mr. Torf. Thank you. Good morning, Your Honors. May it please the Court, I'm Jason Torf, and I represent Schaumburg Bank &Trust, the appellant in this case. There are two issues that are raised, Your Honor, before the Court. One is standing, and the second is whether the bank's security interest extends only to identifiable proceeds. Counsel, before we get to any part of the merits, I'm concerned about appellate jurisdiction. Bankruptcy is still ongoing, and the bankruptcy judge's order does not seem to say how much of the estate Schaumburg Bank, or indeed anybody else, gets. The only order the bankruptcy judge entered says that it approves the settlement. All questions about who gets what part of the settlement and any other assets appear to be unresolved in the bankruptcy court. So how is this appealable? Well, Your Honor, I think that would be a subsequent issue to be decided by the bankruptcy court at the time. No. Whether it's appealable is to be decided by us. I'm sorry, Your Honor. I mean the distributions are a subsequent issue to be decided by the bankruptcy court. This court has jurisdiction because there was a final order as to the bank's rights. Why is it a final order when the bankruptcy judge has not only not wrapped up the case, but hasn't even wrapped up the bank's claim? Because we don't know what the bank is getting out of this bankruptcy. For all we can tell, in light of the bankruptcy judge's order, Schaumburg Bank will get every penny of the estate. See, I had a very similar question because having decided that the $36,000 and some is recoverable by the trustee under the settlement, it's now been recouped by the trustee for the bankruptcy estate. And my question, kind of an analogous question to Judge Easterbrook's, is now what? As far as I know, Schaumburg Bank may be the senior creditor. It may be that the assets of the estate are going to go satisfy Schaumburg Bank's claims, although not in the more direct way that Schaumburg Bank wanted it to happen, but nonetheless through this somewhat circuitous way. But if Schaumburg Bank is going to get some or all of that money recovered by the trustee, then I don't know what its complaint is. And then that sort of backs you into the question of why is this the final word on this subject? Well, I think there are several issues there, Your Honor. There is a determination to be made. Schaumburg Bank's security interest has been deemed and determined by the bankruptcy court to not attack. Actually, the bankruptcy court's order didn't do that. The bankruptcy court's order approves the settlement. It does not. It doesn't say anything about the bank's security interest. And the judge said he was setting that for a separate hearing. But before that hearing could occur, the bank filed a notice of appeal to the district court. This issue has not been resolved in the bankruptcy court. Your Honor, I think what the bankruptcy court said is that the bank's security interest can attach only to identifiable proceeds, Look, there is a fundamental difference between something a judge says and something a judge has decided. We're going to say a lot of things in oral argument here today, but we will decide only what we decide. And what happened in this litigation was, without regard to what the bankruptcy judge may have said on some transcript, all the bankruptcy judge decided is that the settlement is approved, and the judge said he was then going to have a separate hearing on what the bank would get as a result of that. I mean, you would agree, would you not? I mean, trustees gather money up for the estate, and then they decide, based on priorities and so on, whether the money goes to secured creditor A or secured creditor B, or whether it's in the pool that gets distributed among the unsecured creditors. That's just standard bankruptcy, right? That's the part we don't know about, because if the bank winds up with all of it, if it's a small enough estate and it's got a senior enough position, maybe it's not hurt by this. Your Honor, there are, I know this is not in the record, but there are other unsecured creditors in the case, and there are very few assets, if any, in this estate. So what said that the bank was unsecured? What this says is that the settlement is approved. That much we know. And we also know that the bankruptcy court and the district court draw a distinction that you are not drawing between, number one, relief from the automatic stay, and number two, assignment of the claim, the cause of action, if you will, that belongs to the trustee to gather assets for the estate, back over to you. And you conflate the two. Everybody calls it derivative standing, which may be not the best term, but let's just understand that's what we're talking about. But unlike the case, for example, that you included from Judge Weedoff, there's been no event ever in this case in which the bankruptcy court gave your client derivative standing to pursue this claim. That's right, Your Honor. Instead, the bankruptcy court gave my client relief from the automatic stay. Right, but for its own claims. But this claim belonged to the trustee, and you might still get some of the money if you're still a secured creditor with a perfected security interest. Your Honor, we respectfully disagree that this claim belongs to the trustee because this case is different from the Seventh Circuit precedent on this issue because we have relief from the automatic stay. But relief from the stay doesn't reassign a claim. Relief from the stay means you can pursue actions that are yours. Your Honor, relief from the stay in this case. There's a distinction between derivative standing and relief from the stay here, Your Honor. The big distinction is that derivative standing would give a party the right to pursue a claim on behalf of the trustee and the estate. Right, exactly, and since this claim belonged to the trustee under bankruptcy law, that's what would have had to happen in order to let you, on behalf of the trustee, as happened in many of these other cases that you cited, pursue this claim. And instead, you just kind of skipped over that step. Well, in following your point, Your Honor, the reason the claim is the trustee's claim is because it's deemed to be property of the estate, and the point of modifying the stay is to be able to pursue property of the estate. Not necessarily. No, there are lots of reasons why people get relief from the automatic stay. Sometimes they have other claims that they'd like to pursue that don't directly deliver money back into the estate. They just resolve property rights or something. That's right. There are many reasons to modify the stay, and here, Your Honor, the stay was modified. Different from these other cases, the Seventh Circuit precedent and the bankruptcy court cases we cited, the stay was modified, and it was modified very broadly to give the bank the right to pursue its state law remedies. It never says, it doesn't, it's state. I guess I'm emphasizing the word it's, and you aren't. Right, Your Honor. To pursue its state law remedies and fraudulent transfer is a remedy for a secured creditor to pursue its collateral that has been wrongfully transferred, and that's exactly what happened here. The bank obtained relief from the automatic stay to pursue its state law remedies. It never told the trustee, I mean, see, this I think is you assuming the answer to the question that's before us, actually. But the question that I guess we started with is why does this make such a difference? Because if the trustee recovered the money for the estate and the bank has priority for the estate distributions, which I assume you would argue if you were before the bankruptcy court, then what's at stake here? Well, what's at stake here, Your Honor, is very critical for the bank and potentially for the banking industry. If this decision were allowed to stand, there could be a significantly harmful effect because it could incentivize savvy debtors, savvy borrowers, to transfer their assets and essentially make an end run around the sanctity of contract, a loan and security agreement, where a bank has a security interest in particular in receivables. If a borrower is able on the eve of bankruptcy to transfer its receivables to a willing participant, a third party as here, who would then dissipate that cash and the bank's security interest disappears, then the bank can't rely on that security interest existing as its borrower goes into bankruptcy. So that's the reason we're here, Your Honor. The money is not significant here, but the policy considerations are incredibly significant because that's exactly what's being argued here, Your Honor. The argument that the trustee is making is that the bank's security interest in receivables simply disappeared. Right, it followed the lowest intermediate balance rule because your security interest extends only to the identifiable proceeds. It doesn't extend to, I mean, the collateral itself is gone. The collateral was the receivable. That's kind of an idea. Then there are direct proceeds of the collateral and there are indirect proceeds. You didn't trace it through. Right, the collateral is the receivable, Your Honor, and I think what the lower courts missed critically is Section 9B of the Illinois Uniform Fraudulent Transfer Act that enables a creditor under UFTA to recover either the collateral itself, the asset, or the value of the collateral. If and only if you are correct that this claim belonged to the bank and not to the trustee. Well, UFTA says that regardless, Your Honor, and this is a little bit different. No, it doesn't. The Illinois Uniform Fraudulent Transfer Act. It would really help us if you used words rather than abbreviations that we don't know. I apologize, Your Honor. The Illinois Uniform Fraudulent Transfer Act, Section 9B, says that a party pursuing an action under that act can pursue either the asset itself or the value of the asset. So we would argue, Your Honor, that what the trustee did through its settlement is recover the value of the asset, not the asset itself. For the estate, where it's sitting now. But for that same reason, Your Honor, the bank's security interest remains because the lower courts went too far by going The bankruptcy judge hasn't decided that issue yet. We're coming back to the question about jurisdiction. You seem to think that the bankruptcy judge has telegraphed how that issue will be decided. But it hasn't been decided. That does seem a problem, does it not? Well, I think the bankruptcy judge said that the bank's security interest cannot extend to any amount greater than the proceeds. The bankruptcy judge may have said that, but did the bankruptcy judge ever decide that? You don't think you can appeal from statements and transcripts. You can only appeal from judgments. Where is the judgment resolving that issue? The only judgment to which you have pointed is one that says the settlement is approved, period. That's it. There's no decision of the bankruptcy judge resolving the question who has priority in these assets. Your Honor, I think the order is inextricably tied with the opinion of the court, which is an oral opinion. It's a transcript. The order itself is very short and very narrow, Your Honor, and you're right. Exactly. But you appeal from judgments, not from oral statements. That's a fundamental rule of federal law. But the settlement, Your Honor, was approved on the basis of the trustee's business judgment and the bank not having a security interest in the assets. That's what the court found. That means the assets didn't move outside of the bankruptcy over to the bank. They went into the estate where they're now going to be distributed, however they're distributed. Right. You understand lots of reasons that people like to have perfected security interests. They don't have to go through all of that. Of course, the fact that you've taken this appeal means there will be fewer assets because the trustee's charges come off as administrative expenses ahead of any distribution. You may have shot yourself in the foot. We recognize that issue, Your Honor, and we felt that this issue was particularly important enough to bring to this court. I see that I'm into my rebuttal time. You may save it if you like. Thank you. Mr. Horvath. Your Honor, if it pleases the court, I'll proceed. To the jurisdictional point that Judge Easterbrook raised, we did not object to jurisdiction in this case. We did consider the issue in our briefing. Jurisdiction is an issue we have to raise whether people have objected or raised it or waived it. Yes, Your Honor. The case that we found instructive on the point was your recent decision in the in-rate bulk petroleum corporation case. The key language from the decision is that we look, therefore, to see if the district court in a bankruptcy case finally disposed of a discrete dispute within the larger case. And in our view, in briefing the appeal, the discrete dispute of the objection to the settlement had been resolved. Therefore, we raised no objection on jurisdiction but would obviously defer to the court's ruling in that regard. Right. I mean, because what we've tried to do, I mean, it's a question of vocabulary. A dispute is in some sense a self-contained case, if you will. A dispute isn't issue by issue by issue. And, you know, sometimes it's hard to communicate that. What we've said and what the Supreme Court said in Bullock against Blue Hills Bank is whether it is the kind of dispute that could be a stand-alone case outside of bankruptcy. Is the question whether a particular settlement shall be approved a stand-alone dispute that would be its own case outside of bankruptcy? Or would we need to know outside of bankruptcy who gets the money? Your Honor, I do think that knowing who gets the money is an important consideration here. But I don't know that it's absolutely essential for the court to know that before it can rule on the merits of the order that Judge Castling entered on whether the settlement was proper or not. Whether that security interest exists in the settlement. So I do believe that it's discreet enough where it could have been ruled on independently in a different context. The case Your Honor just referred to, the Bullard v. Blue Hills Bank case, is in fact the case that's referenced in the In Re Bulk Petroleum Corporation case. That's simply by way of explaining to the court that we did not deem it necessary to brief jurisdiction but will obviously defer to the court's determination of its subject matter jurisdiction. In terms of the merits of our arguments, the first issue which the court has raised already is did the bank have a security interest in those settlement proceeds? And that to us is the key issue because in our view, the argument that the bank has raised about whether or not it had standing to proceed with its own state court proceeding and obtain a state court judgment is really irrelevant. It doesn't matter whether the bank had standing to obtain a state court judgment under the Illinois Uniform Fraudulent Transfer Act. The reason for it is that the trustee's settlement proceeds, not the bank's judgment, are what was before the court's below. The settlement proceeds are subject to the tracing analysis, which we see in Article 9, Section 315 of the Illinois UCC. So in our view, all roads lead back to Article 9, Section 315. And what does any of this have to do with standing? Both sides keep talking about standing. Standing means injury in fact, causation, and redressability. And all three of those look like they're bad. Your Honor, I agree that standing is not the best descriptor for the concept that we're dealing with here. It's not applicable. The Supreme Court loudly insisted just a term and a half ago that the word standing never be used when what you mean is any aspect of the merits, like whether the trustee or the bank owns this claim or how Article 9 of the UCC applies to this claim. None of those has to do with standing. I think more aptly stated, Your Honor, it's a question of stay relief rather than standing and what the import of the stay relief order was. Well, it is that, but I just want to say, I mean, looking at what seems really to be going on in these cases, it seems that the trustee is the owner of the claim, any claim, about gathering assets to the estate. The trustee, as the owner of the claim, can assign it to somebody else to pursue it, and there are cases in which such an assignment happens. Not this case, as it seems, depending how one reads the stay order. Simply lifting the automatic stay doesn't say to me much about whether a claim has been assigned from A to B. We agree with that position, Your Honor. Under this Court's case law, once the bankruptcy case gets filed, the trustee really owns that fraudulent transfer action, and there are two ways the trustee can give that action up. And the trustee has to own these things if bankruptcy is going to work in assembling all the assets. It's part of the orderly administration of the bankruptcy estate for the trustee to get to decide when the trustee is going to assert a preference claim or a fraudulent transfer claim versus when the trustee is going to give that up. We believe this Court's case law, starting back in the late 1980s with the Koch refining case, was very clear in articulating that the trustee owns the claim, and there are two ways for the trustee to abdicate the claim. One is abandonment. One is the concept that the courts have described as derivative standing. Sometimes a creditor will move for derivative standing. Which I'm saying is probably better described as simply an assignment. You may now proceed with this, the trustee is saying. Yeah, I think that, Your Honor, whether we describe it as an assignment or something else, the core concept It could be a dispute about who is the real party in interest. The core concept is to look at these two notions of abandonment and derivative standing, neither of which came into play here when the bankruptcy court entered its stay relief order. The bankruptcy court actually... What did the bankruptcy court think was going to happen, though, with this stay relief order? I think the bankruptcy court believed that certain state law remedies, other than taking over a claim that the trustee owned, could be exercised. Like what? For example, if the creditor had desired to protect its assets, it could start to issue third-party payor letters to people who were going to be paying money to Hartford & Sons, the debtor. The trustee or the bank that the creditor also could have initiated certain foreclosure proceedings in state court on collateral where it had a priority interest under the UCC. There are certain mechanisms under state law that the creditor or the bank here could have taken advantage of under the terms of that order. And when the bankruptcy court was actually notified of what the bank did here, once the bankruptcy court found out that the fraudulent transfer action had been filed, the bankruptcy court was quick to say, I did not give you authorization to proceed with the fraudulent transfer action. The bankruptcy court interpreted its own order. The series of events here is significant because the stay-relief order was entered at one point in time. Then additional proceedings occurred. It's very clear from the record that at the time the stay-relief order was entered, neither the trustee nor any of the other creditors nor the bankruptcy judge received notice that the bank intended to pursue a fraudulent transfer action in state court. It's even established that the bank didn't know that it had a fraudulent transfer action at the time it applied for stay-relief. They think that cuts both ways, actually, but yes. Well, the way that we view that, Your Honor, is the bank didn't even realize what it was asking for at the time it sought stay-relief if it's now coming back and saying that it was clearly asking for permission to pursue a fraudulent transfer claim. Those were the considerations that the bankruptcy court took into account when it interpreted its own stay-relief order. We submit that those considerations are entitled to some deference because this is a situation where the bankruptcy judge is subsequently interpreting an order that he entered. Even aside from those considerations, we get back to the two points we discussed. There was no abandonment of the claim here, nor was there any derivative standing granted as to the claim. So on the one hand, we can simply defer to how the bankruptcy judge interpreted his own order, and on the other hand, we can conclude as a matter of law that there was no formal grant of standing or an assignment, or however we decide to phrase it, based on abandonment or the conferral of derivative standing. I wanted, Your Honors, to spend a few more minutes talking about the Article 9, Section 315 issue. We think that that issue is fairly clearly resolved based on the statutory language here. Your Honors are familiar with what that language says. I won't go through it in painstaking detail, but the reason that that statute, that that state law applies here is because there's a directive under 11 U.S.C. Section 552b.1 that says that debtor's security interest extends to post-petition, that is post-bankruptcy petition proceeds of collateral under, and this is a quote from the statute, applicable non-bankruptcy law. So that's the directive that we use to get to the application of Article 9, Section 315 in this case. To the proceeds, to the settlement proceeds. Correct, correct. And that's, Your Honor, that's the key distinction that's important to keep in mind. The proceeds that we're dealing with here are the settlement proceeds. They're not anything that the bank is dealing with in a separate state court proceeding. The settlement proceeds came from a bank account that contained commingled funds, and because the settlement proceeds came from that bank account, you have to apply this tracing analysis that's prescribed by Article 9, Section 315 of the UCC. Now, I was a little confused by the conversation back and forth in the record. After this all happens, under your view, is the bank getting $3,000 and some dollars or nothing? Your Honor, at the point in time the bankruptcy court hearing occurred, my colleague made a reference on the record to the fact that the last balance in the account that he had checked would have entitled the bank to approximately $3,000 in proceeds. But that determination was made at a time that time elapsed, time elapsed, and it's our belief that the balance of the account actually went down to zero, and with the fall in the balance of the account, with that occurring, the bank wouldn't be entitled to recoup anything. So $3,000 was an estimate at the time, but the balance of the account shifted, and the bank never took up the opportunity to conduct this tracing analysis or to put on evidence before the bankruptcy judge about tracing. So it's our belief that based on the shift in the balance, the bank would not be entitled to any recovery at this point based on its alleged security interest. I wanted to comment briefly as well, Your Honor. The bank has mentioned that Section 9 of the Illinois Uniform Fraudulent Transfer Act is applicable here, and I think it's pretty clear that Section 9 is irrelevant. Section 9 says that a creditor may recover judgment for the value of the creditor's asset in an action by the creditor, and this gets back to the notion here that the trustee's recovery, the recovery before the court, is the settlement proceeds. The settlement proceeds were not recovered pursuant to the Illinois Uniform Fraudulent Transfer Act. But even if, to take this one step further, even if there had been no settlement, and even if the trustee had been required to proceed with a Uniform Fraudulent Transfer Act action or an action under the equivalent federal statute, which is 11 U.S.C. 550, the bank still wouldn't be entitled to any recovery because the trustee still would have had to go through the same tracing analysis as the bank in the context of a UFTA claim. So again, it's our view that all roads lead back to the application of Article 9, Section 315 here, and that because the bank couldn't satisfy the requirements of that statute, the bank isn't entitled to any recovery, and the same burden would have been placed on the trustee had the trustee not settled the matter. If Your Honors have no further questions, I will conclude my remarks. Apparently not. Thank you very much. Thank you. Anything further, Mr. Torb? First, on the security interest issue, the trustee acknowledges here that the trustee would have had to trace. I think it's a red herring, Your Honor, that the settlement motion is not based on or that 9b doesn't apply because the settlement motion sounds in and is based upon claims that the trustee had or could have asserted under, among other statutes, the Illinois Uniform Fraudulent Transfer Act. In order to recover those proceeds, which the trustee did, the trustee recovered the full amount of the transfers, the trustee must have recovered the value, Your Honor. So 9b, I think, does apply, Your Honor. Otherwise, the trustee could not have recovered under a theory of fraudulent transfer the full amount. It's not uncommon, though, for settlement proceeds to be treated differently from the results of a judgment or something of the sort. It's a contractual resolution of disputed issues. It is, Your Honor, but I think the bankruptcy court was in a position to say, well, wait a minute, you shouldn't recover the full amount here because you'd have to trace, and the balance went all the way down. The trustee is and should be in the same position as the bank with respect to tracing. So I think that that argument cuts both ways. Also, Your Honor, as to the standing issue, the fraudulent transfer claim is something that the bank can pursue. It's the vehicle. The fraudulent transfer action is not the collateral itself. The fraudulent transfer action is the vehicle for, in this case, a secured creditor to recover upon its collateral. It's the mechanism, no different from a direct pay letter to an account debtor or taking steps to repossess equipment or inventory, and that goes to the scope of the stay-relief order. It's clear here that the bank did not know at the time the stay-relief order was entered that it had this fraudulent transfer action, and that happens very, very often. A bank can't possibly know all of the avenues it's going to pursue in order to recover upon its collateral, and that's exactly what happened here. The stay-relief order was fraud enough, and I see my time is up. All right. Thank you very much. Thank you. Thanks to both counsel. We'll take the case under advisory.